# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>COLORADO NATIONAL BANCORP,<br>EIN: 27-0847337<br><br>Debtor. | CHAPTER 11<br><br>CASE NO.: 17-20315 EEB |

**ORDER PURSUANT TO U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006 AND 9014, AND LOCAL RULE 6004-1 (I) APPROVING THE SALE OF THE DEBTOR'S EQUITY INTEREST IN NONDEBTOR SUBSIDIARY; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED TO THE EQUITY INTERESTS; (III) AUTHORIZING CONSUMMATION OF SALE TRANSACTION; AND (IV) GRANTING RELATED RELIEF**

Upon the motion dated November 9, 2017 (the "Motion") [Docket No. 11] of Colorado National Bancorp (the "Debtor"), for Entry of an Order Pursuant to U.S.C. §§ 105(a), 363, and 365, Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014 and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Colorado (the "Local Rules") (I) Approving the Sale of the Debtor's Equity Interests in Nondebtor Subsidiary; (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases Related to the Equity Interests; (III) Authorizing Consummation of the Sale Transaction; and (IV) Granting Related Relief; and pursuant to the Order (A) Establishing Bidding Procedures Relating to the Sale of the Debtor's Equity Interests in Nondebtor Subsidiary; (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related to the Equity Interests; (C) Approving Bidding

4838-2343-5618.v2

Protections for the Stalking Horse Bidders; (D) Scheduling a Hearing to Consider the Proposed Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief, entered on February 23, 2018 (the "Bidding Procedures Order") [Docket No. 146]; and a hearing having been held on April 23, 2018 (the "Sale Hearing") to consider approval of the sale of the Shares and the Other Purchased Assets (including the assignment of the Assumed Bank Related Contracts) (collectively, the "Purchased Assets"), as such terms are defined in the Stock Purchase Agreement by and between Jeffrey A. Desich, Richard A. Desich and Colorado National Bancorp ("Purchase Agreement") to Jeffrey A. Desich and Richard A. Desich or their designee (collectively, the "Buyers") (as well as the assumption by the Buyers of the Assumed Bank Related Contracts (hereinafter the "Assumed Contracts and Assumed Leases" or "Assumed Contracts or Assumed Leases")) pursuant to the terms and conditions of the Purchase Agreement,[1] as determined by Thomas M. Kim, appointed by this Court to serve as the Independent Sales Examiner [Docket No. 176], to be the highest and best offer for the Purchased Assets; and Debtor having represented that adequate and sufficient notice of the Motion, the Cure Notice, the Purchase Agreement and this Sale Order having been previously given to all known parties in interest in this case entitled to such notice; and all such parties having been afforded an opportunity to be heard with respect to the Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections thereto, if any; and (iii) the arguments of counsel made, and the evidence

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion, Bidding Procedures Order, or Purchase Agreement, as applicable.

2

proffered or adduced, at the Sale Hearing or submitted in advance of the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor, it hereby is

FOUND AND DETERMINED THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. This Court has jurisdiction over the Motion and the transactions contemplated by the Purchase Agreement (the "Sale Transaction") under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as complemented by Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rule 6004-1.

D. The Debtor having represented that as evidenced by the affidavits or certificates of service filed with this Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Cure Notice, the assumption, assignment and sale of the Assumed Contracts and Assumed Leases and the other relief granted herein, and a substantially similar form of this Sale Order, have been provided in accordance with Bankruptcy Code sections 102(1), 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1; (ii) such notice was good, sufficient and appropriate under the circumstances, and reasonably calculated to reach and

4838-2343-5618.v2

apprise all known holders of Interests (as hereinafter defined), and all other parties in interest about the Motion, the Sale Hearing, the Cure Notice, the assumption, assignment and sale of the Assumed Contracts and Assumed Leases, and the other relief granted herein; and (iii) no other or further notice of the Motion, the Sale Hearing, the Cure Notice, the assumption, assignment and sale of the Assumed Contracts and Assumed Leases and the other relief granted herein is or shall be required.

   E. Based on the Debtor's representations, a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein has been afforded to all known interested persons and entities, including: (i) the Office of the United States Trustee for the District of Colorado; (ii) counsel for the Buyers; (iii) the Office of the Comptroller of Currency; (iv) any party known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other Interest (as hereinafter defined) in or upon any of the Purchased Assets which are to be sold pursuant to the Purchase Agreement; (v) all known nondebtor parties to executory contracts proposed to be assumed and assigned under the Purchase Agreement; (vi) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Purchased Assets; (vii) the Internal Revenue Service; and (viii) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).

   F. As demonstrated by the Debtor's offer of proof at the Sale Hearing, (i) the Debtor has appropriately marketed the Purchased Assets; and (ii) a full, fair and reasonable opportunity has been given to any interested party to make a higher or better offer for the Purchased Assets.

   G. The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive and substantively and procedurally fair to all parties and were reasonably calculated to

4838-2343-5618.v2

result in the best value received for the Purchased Assets. The Auction process set forth in the Bidding Procedures afforded a full, fair, and reasonable opportunity for any party in interest to become a Qualified Bidder and to submit a Qualified Bid and participate in the Auction. As demonstrated by (i) the testimony and other evidence proffered and adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Independent Sales Examiner conducted the bidding process (including the selection of (x) the Successful Bid with the material economic terms of Closing Tangible Common Equity (as defined in the Stock Purchase Agreement and determined in accordance with Section 2.7 of the Stock Purchase Agreement) plus $4.2 million, and (y) the Backup Bid with the material economic terms of Closing Tangible Common Equity (as defined in the Stalking Horse SPA and determined in accordance with Section 2.7 of the Stalking Horse SPA) plus $4.0 million and the agreement of the Backup Bidders to pay the Broker Fee under the Stalking Horse SPA), the Auction, and the sale process, in good faith, without collusion and in accordance with the Bidding Procedures and the Bidding Procedures Order.

   H. The Independent Sale Examiner, upon consultation with the Committee and the Debtor, has selected the Stalking Horse Bidders as the Backup Bidders, and the Stalking Horse Bidders have consented to serve as the Backup Bidders for an agreed period of time and subject to the provisions of the Stalking Horse SPA (as amended to reflect the increased Purchase Price and other changes to the Stalking Horse SPA agreed to by the Stalking Horse Bidders at the Auction), the Bidding Procedures Order and this Order, including paragraphs 29 and 30 hereof.

   I. The Buyers (i) are purchasing the Purchased Assets in good faith and (ii) are good faith purchasers for value within the meaning of section 363(m) of the Bankruptcy Code and

4838-2343-5618.v2

therefore are entitled to the full protections of that provision and any other applicable or similar bankruptcy or non-bankruptcy law. The Buyers otherwise have proceeded in good faith in all respects in connection with this proceeding in that, among other things: (a) the Buyers recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets, (b) the Buyers were subjected to an auction process designed to solicit competitive bids, (c) all payments to be made by the Buyers in connection with the Purchase Agreement have been disclosed, (d) the Buyers have not violated section 363(n) of the Bankruptcy Code by any action or inaction, and (e) the Purchase Agreement was negotiated, proposed and entered into in good faith and from arm's-length bargaining positions with the parties represented by competent counsel of their choosing. Neither the Buyers nor any of their affiliates or representatives are "insiders" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

J.      The consideration provided by the Buyers pursuant to the Purchase Agreement, including the Purchase Price and the Equity Contribution, is fair and adequate, is the highest or otherwise best offer therefor and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia (including the Uniform Fraudulent Transfer Act, Uniform Voidable Transactions Act, and the Uniform Fraudulent Conveyance Act). The Purchase Agreement was not entered into, and neither the Debtor nor the Buyers have entered into the Purchase Agreement or propose to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding the Debtor's present or future creditors. The Debtor's determination that the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets

4838-2343-5618.v2

constitutes a reasonable, valid and sound exercise of the Debtor's business judgment, and is in the best interests of the Debtor, its estate and its creditors.

K. Subject to the entry of this Sale Order, the Debtor has full power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale transaction has been duly and validly authorized. No consents or approvals other than those provided for in the Purchase Agreement are required for the Debtor to consummate the sale transaction described therein.

L. The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. Accordingly, the Debtor has or will have as of the date of Closing all right, title and interest to and in the Purchased Assets that may be required to implement and effectuate the Sale Transaction in the manner contemplated by the Purchase Agreement.

M. The transfer of the Purchased Assets to the Buyers will be a legal, valid and effective transfer of the Purchased Assets and will vest the Buyers at Closing with all right, title and interest of the Debtor in and to the Purchased Assets, free and clear of all claims (as defined in Section 101(5) of the Bankruptcy Code, "Claims"), liens (as defined in Section 101(37) of the Bankruptcy Code, "Liens"), encumbrances and all other interests (collectively including each of the foregoing, "Interests"), except for the liabilities assumed by the Buyers under the Purchase Agreement (the "Assumed Liabilities"). Other than the Assumed Liabilities, the Buyers (and their successors and assigns) shall have no obligations with respect to any liabilities of the Debtor.

N. The Buyers are not successors to the Debtor or its estate by reason of any theory of law or equity and the Buyers shall not assume or in any way be responsible for any liability or

4838-2343-5618.v2

obligation of the Debtor or its estate, except as otherwise expressly provided in the Purchase Agreement or this Sale Order. The Buyers are not a continuation of the Debtor or its estate, and there is no continuity between the Buyers and the Debtor. The Buyers are not holding themselves out to the public as a continuation of the Debtor or its estate and the Transactions do not amount to a consolidation, merger or *de facto* merger of the Buyers and the Debtor.

O. A sale of the Purchased Assets other than one free and clear of Interests on the terms set forth herein would be of substantially less benefit to and would adversely affect the Debtor's bankruptcy estate. The Buyers would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the transfer and sale of the Purchased Assets as provided therein were not free and clear of all Interests, or if the Buyers would, or in the future could, be liable in respect of any such Interests.

P. The Sale Transaction neither impermissibly restructures the rights of the Debtor's creditors or holders of the Debtor's equity securities nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtor. The Sale Transaction does not constitute a *sub rosa* plan.

Q. The Debtor has represented that there were no existing defaults in any of the Assumed Contracts and Assumed Leases and the Buyers have provided adequate assurance of future performance of and under the Assumed Contracts and Assumed Leases, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. The Buyers' promises to perform the obligations under the Assumed Contracts and Assumed Leases after the Closing shall constitute adequate assurance of future performance under the Assumed Contracts and Assumed Leases

4838-2343-5618.v2

being assigned to it within the meanings of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

R. The Cure Notice (including any supplemental Cure Notice) identifying all executory contracts and unexpired leases that may be assumed and assigned to the Buyers plus the corresponding cure amount was served upon all nondebtor counterparties to such contracts and leases identified therein as per the affidavits of service filed in these cases. Such notice was good, sufficient and appropriate under the circumstances and no other or further notice need be provided in connection with the assumption and assignment of the Assumed Contracts and Assumed Leases and fixing of cure amounts related thereto.

S. The Assumed Contracts and Assumed Leases are assignable notwithstanding any provisions contained therein to the contrary. Failure to object to the assumption and assignment of an Assumed Contract or Assumed Lease is deemed consent to the assumption and assignment.

T. The Debtor may sell the Purchased Assets to the Buyers free and clear of all Interests (except the Assumed Liabilities) in accordance with, and to the extent permitted by, section 363(f) of the Bankruptcy Code because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests against the Debtor, its estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.

U. It is a reasonable exercise of the Debtor's business judgment to consummate the Sale Transaction contemplated by the Purchase Agreement, and such actions are in the best interests of the Debtor's estate and its creditors. The consummation of the Sale Transaction is legal,

9

4838-2343-5618.v2

valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

V. The Purchase Agreement is a valid and binding contract between the Debtor and the Buyers, which is and shall be enforceable against the Buyers and the Debtor according to its terms.

W. The Debtor has articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(g), and 6006(d).

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted as set forth herein.

2. No party filed an objection to the entry of this Sale Order or the relief granted herein and requested in the Motion.

**Approval of the Purchase Agreement and the Transactions**

3. The Purchase Agreement and the transactions contemplated thereunder are hereby approved.

4. The Buyers' offer for the Purchased Assets, as embodied in the Purchase Agreement, is the highest and best offer for the Purchased Assets and is hereby approved.

5. The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement the Purchase Agreement, together with all additional instruments and documents that the Buyers reasonably deem necessary or appropriate to implement the Purchase Agreement and effectuate the Sale Transaction, and to take all other and

further actions as may be reasonably requested by the Buyers for the purpose of assigning, transferring, granting, conveying and conferring to Buyers the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations of the Buyers and Debtor as contemplated by the Purchase Agreement.

6. The transfer of the Purchased Assets to the Buyers upon the Closing pursuant to the Purchase Agreement constitutes a legal, valid and effective transfer of the Purchased Assets, and shall vest the Buyers with all right, title and interest of the Debtor in and to the Purchased Assets, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities, with all such Interests attaching to the net cash proceeds of the sale in the order of their priority, with the same validity, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtor's estate may possess with respect thereto. All holders of Interests fall within one or more subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interests attach to the net proceeds received by the Debtor (excluding, for the avoidance of doubt, the Equity Contribution).

7. If any person or entity that has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Interests in the Purchased Assets (except for the Assumed Liabilities) and has not delivered to the Debtor prior to the Closing, in proper form, as drafted by the Debtor, for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests that the person or entity has with respect to the Purchased Assets, then the Buyers are hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature whatsoever.

4838-2343-5618.v2

8. This Sale Order: (a) shall be effective as a determination that, except for the Assumed Liabilities, at Closing, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated with respect to the Purchased Assets being sold (but not, for the avoidance of doubt, released, discharged or terminated with respect to the proceeds of those Purchased Assets), and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities.

9. Except for the Assumed Liabilities, the sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor and its estate. Except for the Assumed Liabilities, all persons holding Interests against or in the Debtor or the Purchased Assets of any kind or nature whatsoever hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests of any kind or nature whatsoever against the Buyers or its officers, directors, shareholders or partners, its property or its successors and assigns or the Purchased Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtor, its estate, its respective officers, directors or shareholders or the Purchased Assets.

10. Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Equity Interests and/or any other Purchased Assets is hereby directed to surrender possession of such Equity Interests or other Purchased Assets either to (a) the Debtor before the Closing or (b) to the Buyers or their designees upon the Closing.

4838-2343-5618.v2

11. The Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume, assign and sell to the Buyers, effective and conditioned upon the Closing, the Assumed Contracts and Assumed Leases free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the Buyers such documents or other instruments as the Buyers deem are necessary or appropriate to assign and transfer the Assumed Contracts and Assumed Leases to the Buyers.

12. With respect to the Assumed Contracts and Assumed Leases: (a) the Assumed Contracts and Assumed Leases shall be transferred and assigned to, and following the Closing of the sale, shall remain in full force and effect for the benefit of the Buyers, notwithstanding any provision in any such Assumed Contracts and Assumed Leases (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, except as expressly otherwise provided in the Purchase Agreement, the Debtor shall be relieved from any further liability with respect to Assumed Contracts and Assumed Leases after such assumption by the Debtor and assignment and sale to the Buyers at Closing; (b) the Debtor may assume each of the Assumed Contracts and Assumed Leases in accordance with section 365 of the Bankruptcy Code at the Closing; (c) the Debtor may assign and sell (at the Closing) each of the Assumed Contracts and Assumed Leases in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contracts or Assumed Leases that prohibit or condition the assignment of such Assumed Contracts or Assumed Leases or allow the party to such Assumed Contracts or Assumed Leases to terminate, recapture, set off (if not exercised pre-petition), impose any penalty, condition renewal or extension or modify any term or condition

upon the assignment of such Assumed Contracts and Assumed Leases, constitute unenforceable anti-assignment provisions, which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 (including without limitation, the satisfaction of the requirements under Section 365(c)(1)) of the Bankruptcy Code for the assumption by the Debtor and sale and assignment to the Buyers of each of the Assumed Contracts and Assumed Leases have been satisfied; and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyers shall be fully and irrevocably vested in all right, title and interest of each of the Assumed Contracts.

13. Upon the Debtor's assignment of the Assumed Contracts and Assumed Leases under this Order, no default shall exist under any of the Assumed Contracts and Assumed Leases and no counterparty thereto shall be permitted to declare or enforce a default by the Debtor or the Buyers thereunder or otherwise take any action.

14. Each non-Debtor party to an Assumed Contract or Assumed Lease is hereby forever barred, estopped and permanently enjoined from asserting against the Buyers, or the Purchased Assets, any default arising prior to or existing as of the Closing, any indemnification claims or any counterclaim, setoff (if not exercised pre-petition) or any other Claim asserted or assertable against the Debtor. The validity of such assumption, assignment and sale of the Assumed Contracts and Assumed Leases, which shall in all events be effective as of the Closing Date, shall not be affected by the pendency or resolution of any dispute between the Debtor and any non-Debtor party to an Assumed Contracts or Assumed Leases.

15. The failure of the Debtor or the Buyers to enforce at any time one or more terms or conditions of any of the Assumed Contracts or Assumed Leases shall not be a waiver of such

4838-2343-5618.v2

terms or conditions, or of the Debtor's and the Buyers' rights to enforce every term and condition of the Assumed Contracts or Assumed Leases.

16. The Buyers shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets other than the Assumed Liabilities. Without limiting the generality of the foregoing and except as otherwise specifically provided in the Purchase Agreement, the Buyers shall not be liable for any claims against the Debtor or any of its predecessors or affiliates for any obligations of the Debtor arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the Purchased Assets or the Debtor prior to the Closing.

17. The Buyers shall not be deemed, as a result of any action taken in connection with, or as a result of the Sale Transaction including the transfer and sale of the Equity Interests and other Purchased Assets, to: (i) be a successor (or other such similarly situated party) to the Debtor (except as otherwise specified in the Purchase Agreement); or (ii) have, *de facto* or otherwise, merged with or into the Debtor. Except for the Assumed Liabilities, the Buyers are not acquiring or assuming any liens, claims, and other interests, including, without limitation, any liability arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance agreements, change in control agreements or other similar agreements to which the Debtor is or was a party; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtor; (iii) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit

15

4838-2343-5618.v2

plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974 ("ERISA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act (the "WARN Act"); (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims; (v) environmental liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other environmental, health and safety requirements; (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtor; and (viii) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of antitrust or successor or transferee liability. The Buyers and their employees, members, directors, advisors, lenders, affiliates, owners, successors and assigns shall not have any successor or vicarious liabilities with respect to the Debtor, the Equity Interests, the other Purchased Assets or any liens, claims, and other interests of any kind or character.

### Additional Provisions

18. The consideration provided by the Buyers for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

4838-2343-5618.v2

19. The transactions are undertaken by the Buyers without collusion and in good faith, in accordance with Bankruptcy Code sections 363(m) and 363(n). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions shall not affect the validity of the sale of the Purchased Assets to the Buyers, unless such authorization is duly stayed pending such appeal. The Buyers are good-faith purchasers of the Purchased Assets and are entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m) and other applicable law.

20. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

21. The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Sale Order.

22. To the extent of any conflict between the Purchase Agreement and this Sale Order as they relate to the rights and obligations of the Debtor and the Buyers with respect to each other, this Sale Order shall govern. To the extent of any conflict between the Purchase Agreement and this Sale Order not within the scope of the immediately preceding sentence, including, without limitation, as they relate to the rights and obligations of third parties and the rights and obligations of the Buyers with respect to third parties, this Sale Order shall govern.

23. This Sale Order and the Purchase Agreement: (a) shall be binding in all respects upon all creditors of and holders of equity interests in the Debtor (whether known or unknown), any holders of Interests, all non-Debtor parties to any of the Assumed Contracts and Assumed Leases, the Buyers and all successors and assigns of the Buyers, the Debtor and its estate, and the Purchased Assets; and (b) shall not be subject to rejection.

24. The fourteen-day stay otherwise imposed by Bankruptcy Rules 6004(h), 6006(d) and 7062 is hereby waived, and this Sale Order shall be effective immediately upon entry. Time is of the essence in consummating the Sale Transaction contemplated by the Purchase Agreement, and it is in the best interests of the Debtor and its estate to consummate such transaction within the timeline set forth in the Motion and the Purchase Agreement.

25. Nothing in this Sale Order, the Purchase Agreement, or any other related document with any other party shall relieve or excuse the Debtor, the Buyers or any other party from complying with any and all applicable federal securities laws, rules, and regulations with respect to the offer, sale, purchase or distribution of securities or otherwise.

26. The Backup Bid submitted by the Backup Bidders for the Purchased Assets shall be open and irrevocable until August 3, 2018 (as such date may be extended in accordance with this paragraph 29, the "<u>Backup Bid Termination Date</u>"); provided, however that the Backup Bidder may, in its sole and absolute discretion, extend the Backup Bid Termination Date by giving written notice to the Debtor, the Independent Sale Examiner, the Committee, and the Office of the United States Trustee for the District of Colorado at least two (2) business days before the Backup Bid Termination Date (or before the end of any applicable extension thereof) of the new date on which the Backup Bid shall terminate. The definition of "Outside Date" under the Stalking Horse SPA

is modified to mean the later of (x) August 17, 2018 or (y) the date that is 14 days after the receipt by the Backup Bidders of the notification from the Debtor provided for under paragraph 30 of this Sale Order.

27. Upon notification by the Debtor to the Backup Bidders that the Debtor has terminated the Purchase Agreement, and that the Debtor, in accordance with the Bidding Procedures Order, has elected to complete the Contemplated Transactions (as defined under the Stalking Horse SPA) under the Stalking Horse SPA, the Backup Bidders shall be deemed the "Buyers" and the Stalking Horse SPA as amended by the Backup Bid, shall be deemed the "Purchase Agreement" for purposes of this Order, and each of the findings, conclusions, and decretal provisions herein, shall apply to the Backup Bidders and the Stalking Horse SPA in their respective capacities as the "Buyers" and "Purchase Agreement" hereunder.

28. This Court shall retain jurisdiction to interpret, implement and enforce this Sale Order.

Dated: April 26, 2018

BY THE COURT

*[signature]*

Honorable Elizabeth E. Brown
United States Bankruptcy Judge