**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | CHAPTER 11 |
| COLORADO NATIONAL BANCORP, EIN: 27-0847337 | CASE NO.: 17-20315 EEB |
| Debtor. | |

**FIRST AMENDED PLAN OF REORGANIZATION OF COLORADO NATIONAL BANCORP DATED MAY 10, 2018**

Steven T. Mulligan, #19901
Benjamin J. Ross, #49370
JACKSON KELLY, PLLC
1099 18th St., Suite 2150
Denver, CO 80202
Telephone: (303) 390-0192
Email: smulligan@jacksonkelly.com
         bross@jacksonkelly.com

Attorneys for Colorado National Bancorp

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ l01 *et seq.*, Colorado National Bancorp (the "Debtor"), hereby respectfully proposes the following First Amended Plan of Reorganization Dated May 10, 2018 (the "Plan").

# ARTICLE 1
# DEFINITIONS

For purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article.

1.1    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

1.2    "**Allowed**" with respect to a Claim, means: (a) any Claim listed in Debtor's Schedules as filed in connection with its Bankruptcy Case which is liquidated in amount and is not designated as contingent or disputed; and/or, (b) any Claim against Debtor, proof of which was filed on or before the Bar Date or such other bar dates as have been or may be established by order of the court, the Plan and/or the Confirmation Order and against which filed Claim no objection to the allowance thereof has been or will be interposed; or (c) any Claim which has been approved and allowed by a Final Order of the Bankruptcy Court.

1.3    "**Affiliate**" means any Person affiliated with Debtor as defined in Bankruptcy Code § 101(2).

1.4    "**Bank**" means Colorado National Bancorp's wholly owned bank subsidiary, Colorado National Bank.

1.5    "**Bankruptcy Case**" means *In re Colorado National Bancorp.*, Case No. 17-20315 EEB, currently pending in the United States Bankruptcy Court, District of Colorado.

1.6    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and all amendments thereof.

1.7    "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the District of Colorado.

1.8     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as the same may be amended and modified from time to time, and as applicable to cases pending before the Bankruptcy Court.

1.9     "**Bar Date**" means: (a) with respect to Claims arising from the rejection of an Executory Contract or unexpired lease pursuant to the Plan, thirty (30) days after the earlier of the date of the Bankruptcy Court order approving Debtors' rejection of such Executory Contract or unexpired lease or the Confirmation Date; (b) with respect to Professional Fee Claims and Administrative Claims, sixty (60) days after the Effective Date of this Plan or such other date set by the Court; and (c) with respect to all other Claims against Debtors, February 14, 2018 as set forth in Order Granting Motion to Set Bar Date for Filing Proofs of Claim and Request for Forthwith Entry of Order Hereon, dated December 7, 2017.   A list of Claims which are (a) scheduled, but not disputed, contingent or unliquidated, or (b) filed via a Proof of Claim, is attached hereto as Exhibit A.

1.10    "**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" as that term is defined at Bankruptcy Rule 9006(a).

1.11    "**Cash**" means Cash or Cash equivalents, including currency, checks, and wire transfers of immediately available funds denominated in United States dollars.

1.12    "**Causes of Action**" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law, equity or otherwise.

1.13    "**Claim**" has the same meaning as that term is defined in § 101(5) of the Bankruptcy Code.

1.14    "**Class**" means any group of Holders of Claims or Interests as classified in Article 2 of the Plan.

1.15    "**Common Stock Interest**" means an interest in Debtor represented by Debtor's issued and outstanding common stock as of the Effective Date.  All references to Common Stock Interests subsequent to the Effective Date shall be deemed to refer to the Distribution rights of the Holders of Common Stock Interests.

1.16    "**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket maintained by the clerk of the Bankruptcy Court.

1.17    "**Confirmation Hearing**" means the duly noticed hearing held by the Bankruptcy Court to consider confirmation of the Plan. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the adjourned date of the Confirmation Hearing.

1.18    "**Confirmation Order**" means the Order issued and entered confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.19   "**Debtor**" means Colorado National Bancorp, proponent of this Plan.

1.20   "**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or part, by a Final Order; (b) has been withdrawn by agreement of the Debtor and the Holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the Holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly filed.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.21   "**Disclosure Statement**" means the document filed, or to be filed, in connection with Debtor's Chapter 11 Case pursuant to § 1125 of the Bankruptcy Code and approved by the Bankruptcy Court as containing "adequate information" as that term is defined in § 1125(a) (1) of the Bankruptcy Code, and any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.22   "**Disputed Claim**" means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this Case, or any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.23   "**Distribution**" means any distribution by the Plan Administrator made pursuant to the Plan.

1.24   "**Effective Date**" means the later of the first Business Day (a) that is at least fourteen (14) days after the Confirmation Date unless stayed pending appeal, or (b) after closing under the Stock Purchase Agreement or the Stalking Horse Bidders SPA .

1.25   "**Entity**" shall have the meaning assigned in § 101(15) of the Bankruptcy Code.

1.26   "**Estate**" means Debtor's bankruptcy estate created in the above-captioned Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

1.27   "**Estate Assets**" means, collectively, all of the legal and equitable rights in and to all assets, property, interests and affects, real and personal, tangible and intangible, wherever situated, held at any time by the Estate.

1.28    "**Executory Contract**" means any executory contract or unexpired lease of real or personal property, as contemplated by §§ 365, 1113, 1114 of the Bankruptcy Code, in effect on the Petition Date, between Debtor and any Person, and including, without limitation, any written employment agreements or plans and employee benefit plans and agreements.

1.29    "**Final Decree**" means a Final Order of the Bankruptcy Court closing the Bankruptcy Case.

1.30    "**Final Distribution**" means the Distribution by the Plan Administrator, which satisfies in full the obligations set forth in the Plan.

1.31    "**Final Order**" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with this Case, matters relating to this Case, or proceedings therein, which has not been reversed, stayed, modified or amended and as to which the time to appeal or to seek certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review of rehearing has been waived in writing in a manner satisfactory to Debtor.

1.32    "**General Unsecured Claim**" or "Unsecured Claim" means any Claim against Debtor, that is not a Secured Claim, Administrative Claim, Priority Tax Claim or Priority Claim, including without limitation any Claims arising from the rejection of Executory Contracts and/or unexpired leases, and including any allegedly secured but unperfected Claims that are not otherwise dealt with in this Plan.

1.33    "**Holder**" means the beneficial owner of any Claim or Interest.

1.34    "**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.35    "**Interest**" means any ownership interests Debtor has in the Estate.

1.36    "**Late Claim**" means a General Unsecured Claim filed after the Bar Date or after any filing deadline applicable to such Claim, which has the priority described in § 726(a)(3) of the Bankruptcy Code.

1.37    "**Lien**" shall mean (with respect to any interest in property) any mortgage, lien, pledge, charge, security interest, hypothecation, constructive or other trusts, or encumbrance of any kind whatsoever in respect of or affecting such interests in property.

1.38    "**Liquidation Reserve**" means a cash reserve, carved out of the Cash, for the payment of (a) estimated post Confirmation Administrative Claims, (b) all Disputed or unliquidated Claims that are Administrative Claims, Priority Tax Claims or Claims in Classes 1 and 2, and (c) estimated post-confirmation Quarterly UST Fees.

1.39    "**Person**" shall have the meaning assigned in § 101(41) of the Bankruptcy Code.

1.40    "**Petition Date**" means November 8, 2017.

1.41    "**Plan**" means this Plan of Reorganization Dated May 7, 2018, any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.42    "**Plan Administrator**" means Patrick M. Donovan of Cordes & Company or any successor.

1.43    "**Priority Claim**" means any Claim entitled to priority under § 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

1.44    "**Priority Tax Claim**" shall mean an Allowed Claim that is entitled to priority under Bankruptcy Code § 507(a)(8).

1.45    "**Professional**" means any professional employed in Debtor's case pursuant to §§ 327 or 1103 of the Bankruptcy Code or otherwise and any Professional seeking compensation or reimbursement of expenses in connection with Debtor's case pursuant to § 503(b)(4) of the Bankruptcy Code.

1.46    "**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

1.47    "**Pro Rata**" means the ratio of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in that Class.

1.48    "**Quarterly UST Fees**" means post-confirmation quarterly fees owing to the United States Trustee Program pursuant to 28 U.S.C. § 1930(a)(6).

1.49    "**Secured Claim**" means a Claim of a creditor that is secured by property of Debtor, to the extent of the value of the creditor's interest and Debtor's interest in such property, as provided in § 506(a) of the Bankruptcy Code. "Secured Claim" shall also mean a Claim of a creditor that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in § 506(a) of the Bankruptcy Code.

1.50    "**Secured Tax Claim**" means a Secured Claim of a governmental unit that would otherwise meet the description of an unsecured claim of a governmental unit under § 507(a)(8), but for the secured status of that claim.

1.51    "**Stalking Horse Bidders**" means Marks Moskvins and Maksims Jarosevskis.

1.52    "**Stalking Horse SPA**" means the stock purchase agreement dated as of November 8, 2017, amended and restated as of February 23, 2018, between Debtor and the Stalking Horse Bidders.

4827-1434-9925.v2

6

1.53     "**Stock Purchase Agreement**" means the stock purchase agreement dated as of March 28, 2018 between Debtor and Jeffrey A. Desich and Richard A. Desich.

1.54     "**Subordinated Claim**" means a Claim subordinated pursuant to § 510 of the Bankruptcy Code.

**Other Definitions**.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement shall have the meaning set forth therein.

**Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

A.     **Summary**.  The categories of Claims and Common Stock Interests listed below classify Claims and Common Stock Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan and pursuant to §§ 1122 and 1123(a)(l) of the Bankruptcy Code except for Classes pertaining to Administrative and Priority Tax Claims, which are not classified pursuant to 11 U.S.C. § 1123 (a)(1) and are not entitled to vote on the Plan.  A Claim or Common Stock Interest shall be deemed classified in a particular Class only to the extent that the Claim or Common Stock Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Common Stock Interest qualifies within the description of such different Class.   A Claim or Common Stock Interest is in a particular Class only to the extent that such Claim or Common Interest may be Allowed in that Class.

The classification of Claims and Common Stock Interests against Debtor pursuant to this Plan is as follows:

| Class Number | Class | Status | Voting Rights |
|---|---|---|---|
| N/A | Administrative Claims | Unimpaired | No |
| N/A | Priority Tax Claims | Unimpaired | No |
| 1. | Unsecured Claims | Impaired | Yes |
| 2. | Common Stock Interests | Impaired | Yes |

## ARTICLE 3
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

A.     **Treatment of Administrative Claims**.  Administrative Claims are not designated as a Class pursuant to Bankruptcy Code § 1123(a)(1) and are not entitled to vote pursuant to the Bankruptcy Code.   Unless otherwise agreed, these Claims (other than Allowed Operating

Administrative Claims) shall receive payment in full (unless previously paid in full pursuant to Court orders), in Cash on the later of (i) the Effective Date, or (ii) within twenty (20) Business Days after the date these Claims become Allowed Claims; provided, however, that any unpaid Quarterly UST Fees, including any uncontested delinquent fees, shall be paid on the Effective Date. All Professional Fee Claims and Administrative Claims shall be filed within sixty (60) days of the Effective Date or shall be forever barred.

B.     **Treatment of Priority Tax Claims**.  Priority Tax Claims are not designated as a Class pursuant to Bankruptcy Code § 1123(a)(1) and are not entitled to vote pursuant to the Bankruptcy Code.   Unless otherwise agreed, these Claims, at the option of the Plan Administrator, shall receive (i) payment in full (unless previously paid in full pursuant to Court orders), in Cash on the later of (A) the Effective Date, or (B) within twenty (20) Business Days after the date these Claims become Allowed Claims; or (ii) deferred quarterly cash payments, with interest at the prevailing statutory rate set forth in Internal Revenue Code § 6621 per annum, payable over a period of five years, commencing on the later of (A) the Effective Date, or (B) within twenty (20) Business Days after the date these Claims become Allowed Claims.

**ARTICLE 4**
**TREATMENT OF CLAIMS THAT ARE IMPAIRED**

A.     **Treatment of Class 1 Claims**.  Class 1, Unsecured Claims, is Impaired.

1.     Distributions to Holders of Allowed Class 1 Claims shall be made by the Plan Administrator.  Holders of Allowed Class 1 Claims shall receive their *Pro Rata* share of the Distributions based upon the total amount of all Allowed and Disputed Class 1 Claims pending at the time of such Distribution.  Class 1 Claims shall be paid interest accruing at the rate of eight percent (8%) per annum.  No Distribution shall be made in respect of any Disputed Class 1 Claim.  The *Pro Rata* portion of the funds applicable to each Disputed Class 1 Claim shall be withheld unless and until such Claim becomes an Allowed Claim.  The *Pro Rata* portion of the funds withheld in respect of any disputed Class 1 Claim shall be withheld unless and until such Claim becomes an Allowed Claim.  Since Class 1 is Impaired, it is entitled to vote to accept or reject the Plan.

2.     The Plan Administrator shall make subsequent Distributions to Holders of Allowed Class 1 Claims to the extent there are sufficient funds available which are not required to be withheld for Disputed Claims.  Subsequent Distributions will be made first to Holders of Disputed Class 1 Claims that have become Allowed Claims until they have received the same percentage on their Claims as other Allowed Claims and the *pro rata* to all Holders of Allowed Class 1 Claims.

3.     The Plan Administrator shall continue to make Distributions to Class 1 Claims until a Final Decree has been entered in the Chapter 11 Case.

B.     **Treatment of Class 2 Interests**.  Class 2, Common Stock Interests, is Impaired. On the Effective Date all Common Stock Interests will be terminated and cancelled.  Holders of

Allowed Common Stock Interests shall not receive any Distributions and are deemed to reject the Plan.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the Effective Date, all unexpired leases and Executory Contracts which were entered into prior to the Petition Date and have not already been rejected or previously assumed and assigned will be deemed rejected by the Debtor as of the Petition Date.  This Plan shall be deemed to constitute a motion to approve the above-described rejection and entry of an order confirming this Plan shall constitute approval of such rejection.  Holders of Claims arising as a result of rejection under this Article will have until thirty (30) days from the Effective Date within which to file proofs of claim for such rejected Claims, or will otherwise be barred.

## ARTICLE 7
## MEANS FOR EXECUTION OF THE PLAN

A.    **Appointment of Plan Administrator**.   On the Effective Date, Patrick M. Donovan of Cordes & Company shall be appointed Plan Administrator.  He shall exercise the powers and carry out the duties of the Plan Administrator set forth in this Plan until closing of the Case or such time as he is unable to serve, in which case, the Bankruptcy Court, with the input of Holders of Allowed Claims, may appoint a successor.  The Plan Administrator shall be compensated at $335.00 per hour, plus reasonable out of pocket expenses.  Others at Cordes & Company will bill at hourly rates ranging from $75.00 to $425.00.

B.    **Current Officer and Directors**.  As of the Effective Date, all current officers and directors of the Debtor will be deemed to have resigned and the Plan Administrator is appointed as the sole officer and director.

C.    **Powers of Plan Administrator**.   The powers and duties of the Plan Administrator shall include:

1.    To take control of, preserve, and convert Cash property of the Estate, subject to the terms of this Plan;

2.    To investigate and prosecute or abandon all Causes of Action belonging to or assertible by the Estate, including all Avoidance Claims;

3.    To review and object to Claims filed against the Debtor;

4.    To Compromise all disputes, including all Causes of Action, Avoidance Claims, and to Objections to Claims;

5.    To make Distributions on account of all Allowed Claims consistent with the terms of this Plan;

6.     To retain Persons and Professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

7.     To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

8.     To hire employees and/or terminate current employees of Debtor;

9.     To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including Professional Fees incurred after the Effective Date;

10.     To make all necessary actions to assure that the corporate existence of the Debtor remains in good standing until entry of a Final Decree closing the Chapter 11 Case;

11.     To open and maintain bank accounts and deposit funds and draw checks and make Distributions in accordance with the Plan;

12.     In general, without any manner limiting the foregoing, to deal with the assets of the Estate or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith; provided, however, that the investment powers of the Plan Administrator, other than those reasonably necessary to maintain the value of the Estate's assets and to further the liquidating purpose, are limited to the power to invest in demand and time deposits, such as short term certificates of deposit, in banks and other savings institutions, or other temporary, liquid investments, such as United States Treasury Bills;

13.     At the appropriate time, to ask the Bankruptcy Court to make the Final Decree.

C.     **No Liability**.  The Plan Administrator shall have authority to bind the Estate consistent with the terms of the Plan and shall incur no personal liability for contracts or agreements into which he may enter on behalf of the Estate.

D.     **General Authorizations**.  Pursuant to §§ 105 and 1142(b) of the Bankruptcy Code, and, as applicable, pursuant to §303 of the General Corporation Law of the State of Delaware (and any other applicable law of the State of Delaware), the Plan Administrator is empowered to and shall take any and all actions reasonably necessary to implement the transactions contemplated by the Plan, all without further corporate action or action by (or vote of) directors or stockholders of Debtor.  The Plan Administrator shall file post-confirmation quarterly reports.

## ARTICLE 8
## DISTRIBUTIONS AND RESERVES

A.     **Initial Distributions and Liquidation Reserve.**  No later than fourteen (14) days after the Effective Date, the Plan Administrator will pay from the Cash on hand the existing Allowed Administrative Claims and Priority Tax Claims, if any.   After payment of these

Allowed Claims, the Plan Administrator shall establish the Liquidation Reserve. As and when the Claims listed above become Allowed Claims, the Plan Administrator shall pay such claims from the Liquidation Reserve within thirty days from the date the Claim becomes an Allowed Claim. Any Quarterly UST Fee shall be made when due, which payment obligation shall continue until Debtor's chapter 11 case is closed. The Plan Administrator shall also comply with all reporting requirements of the Office of the U.S. Trustee.

B. **Unsecured Claims**. As to Allowed Class 1 Claims, the Plan Administrator shall make periodic Distributions no more frequently than monthly, within his or her sole discretion, on a Pro Rata basis, from the Liquidation Reserve, after the establishment of the Liquidation Reserve. Upon final resolution of a Class 1 Disputed Claim, the Plan Administrator shall make a Pro Rata Distribution on the Allowed amount of such Class 1 Claim (consistent with the percentage paid to other Allowed Class 1 Claims) as provided in Section 9 C herein.

C. **Common Stock Interests**. If and when all Class 1 Unsecured Claims and all Administrative Claims are paid in full, the Plan Administrator or his designee shall make Distributions, on a Pro Rata basis, to all Holders of Allowed Common Stock Interests.

## ARTICLE 9
## DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS

A. **Objections.** After the Effective Date, objections to Claims and Common Stock Interests shall be made only by the Plan Administrator, and objections to Claims and Common Stock Interests made prior to the Effective Date shall be pursued only by the Plan Administrator. The Plan Administrator may, at any time up to the six month anniversary of the Effective Date, file an objection to any Claim or Common Stock Interests that in the Plan Administrator's opinion should be rejected in whole or in part. The period within which to file any such objections may be extended with Court approval. This objection procedure will apply, without limitation, to Claims arising from the rejection of Executory Contracts and unexpired leases. Upon the filing of any such objection, such Claim or Common Stock Interest will be considered a Disputed Claim or Disputed Common Stock Interest, as applicable.

B. **Allowance of Disputed Claims and Payment of Distributions**. Upon the allowance of a Disputed Claim, either by compromise and settlement or by Final Order, the Plan Administrator shall distribute to the Holder of such Allowed Claim the Distributions to which such Holder shall be then entitled within thirty days after the date of the entry of the judgment by which such Disputed Claim becomes an Allowed Claim or otherwise consistent with the timing and terms of Distribution to other members of the same Class.

C. **Reserve for Disputed Claims**. The Plan Administrator shall make an adequate reserve for all Disputed Claims. In calculating the amount of reserves to be contained in the Liquidation Reserve for Disputed Claims, the Plan Administrator shall reserve an amount equal to either (i) the full amount claimed by the Holder thereof; or (ii) the amount of such Claim as estimated or Allowed by order of the Court. In calculating the amount of reserves to be contained in the Liquidation Reserve, any excess amount reserved on such Disputed Claim shall be

4827-1434-9925.v2

released from the Liquidation Reserve. The Plan Administrator shall reserve a percentage of Disputed Unsecured Claims equal to the estimated Pro Rata Distribution for Claims in Class 1. No Holder of any Disputed Claim shall be entitled to recover any Distributions made to other Holders of Allowed Claims regardless of any delay in obtaining an order allowing or estimating a Disputed Claim or unliquidated Claim. Notwithstanding anything herein to the contrary, no reserve shall be necessary on account of unliquidated Claims (except for Administrative Claims), unless and until such Holders shall obtain an order of the Bankruptcy Court estimating such Claim(s) for the purpose of calculating a proper reserve prior to the allowance thereof by order of the Bankruptcy Court

  D. **Estimation of Disputed Claims and Common Stock Interests**. Any Disputed Claim or Common Stock Interest may be estimated by the Court at any time, regardless of whether such Claim or Common Stock Interest has been Allowed by the Court or another court, and regardless of whether any judgment or order with respect to such Claim or Common Stock Interest is on appeal, for purposes of making Distributions or holding funds in reserve under the Plan (if applicable). If a Claim or Common Stock Interest has been estimated by the Court for purposes of accepting or rejecting this Plan, such estimation shall be used for the purposes of making Distributions or holding funds in reserve under the Plan (if applicable), and no further estimation will be required.

### ARTICLE 10
### ADVERSARY PROCEEDINGS AND LITIGATION

  A. **Adversary Proceedings**. To the extent Avoidance Actions exist, the Plan Administrator may pursue them to the fullest extent provided by applicable law and equity, including any Claims or Interests that may exist under Chapter 5 of the Bankruptcy Code including §§ 542, 544, and 547 through 551of the Bankruptcy Code.

  B. **Litigation**. The Plan Administrator shall have the right to commence and defend litigation as necessary in any court of applicable jurisdiction.

  C. **Causes of Action**. Except as otherwise provided in the Plan, as of the Effective Date, pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, any and all Causes of Action accruing to the Debtor, or the Debtor in its capacity as debtor-in-possession, not released or compromised pursuant to this Plan, including, without limitation, actions under §§ 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, shall remain Estate Assets, and the Plan Administrator shall have the authority to prosecute such Causes of Action for the benefit of the Estate. On and after the Effective Date, the Plan Administrator shall have the authority to compromise, settle, discontinue, abandon, dismiss, or otherwise resolve all such Causes of Action when the proposed settlement amount is to be less than $25,000.00 without notice and a hearing and without an order of the Bankruptcy Court. All other settlements shall be subject to notice and a hearing pursuant to § 102(1) of the Bankruptcy Code and a Final Order of the Bankruptcy Court approving the settlement.

## ARTICLE 11
## CONFIRMATION NOTWITHSTANDING REQUIREMENTS OF § 1129(a)(8)

Debtor requests that, if necessary, the Court confirm this Plan, as it may be modified prior to the Confirmation Date pursuant to § 1129(b) of the Bankruptcy Code, notwithstanding the failure of the Plan to satisfy the requirements of § 1129(a)(8) of the Bankruptcy Code.

## ARTICLE 12
## EFFECT OF CONFIRMATION

A.  **Binding Nature**.  From and after the Confirmation Date, the provisions of the Plan shall be binding on Debtor, the Plan Administrator, and all Holders of Claims and Common Stock Interests whether or not such Persons or Entities have accepted the Plan.  All actions in existence on the Effective Date, or other Claims, which could have been brought against Debtor are stayed.

B.  **Discharge**.  Except as otherwise provided herein, any prior orders of the Bankruptcy Court or any other court of competent jurisdiction, on the Effective Date: (1) the rights afforded in the Plan and the treatment of all Claims and Common Stock Interests herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Common Stock Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, or any of its assets, property or its Estate; (2) the Plan shall bind all Holders of Claims and Common Stock Interests, regardless of whether any such Holders failed to vote to accept or to reject the Plan or voted to reject the Plan; and (3) all Claims against and Common Stock Interests in the Debtor, and the Debtor in its capacity as debtor-in-possession, shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including, without limitation, any liability of the kind specified under § 502(g) of the Bankruptcy Code; provided, however, that nothing in this Plan shall discharge any liabilities of the Debtor arising after the entry of the Confirmation Order or that is not otherwise a Claim within the meaning of § 101(5) of the Bankruptcy Code.

## ARTICLE 13
## DELIVERY OF DISTRIBUTIONS

A.  **Delivery of Distributions in General**.  Except as may be otherwise provided in the Plan, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims and Allowed Common Stock Interests shall be made by the Plan Administrator or his designee, at his discretion, (i) to the signatory set forth on any of the proofs of claim or interest (or at the last known addresses of such Holder if no proof of claim or interest is filed or if Debtor or the Plan Administrator has been notified in writing of a change of address); (ii) at the addresses reflected in Debtor's stock register, if no proof of interest has been filed and the Plan Administrator has not received a written notice of a change of address; (iii) in the case of a Holder whose Common Stock Interest is governed by an agreement and/or administered by a servicer, at the addresses contained in the official records of such servicer; or (iv) on any counsel that has appeared in this Chapter 11 Case on the Holder's behalf.  The Plan Administrator shall

not incur any liability whatsoever on account of any Distributions so long as such Distributions are made to Holders of Allowed Claims and Allowed Common Stock Interests, as such Claims and Interests may have been assigned pursuant to the provisions of the Bankruptcy Code and Bankruptcy Rules.

B.      **Foreign Currency Exchange Rate**.  As of the Effective Date, any Unsecured Claim or Common Stock Interest asserted in currency(ies) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of the Effective Date, as quoted at 4:00 p.m., mid-range spot rate of exchange for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

A.      **Undeliverable Distributions**.  If any Distribution to a Holder of an Allowed Claim or Allowed Common Stock Interest is returned to the Plan Administrator or his designee as undeliverable, no further Distributions shall be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address, at which time all currently due missed Distributions shall be made to such Holder without interest.  Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim.   Undeliverable Distributions shall remain in the possession of the Plan Administrator or his designee until such time as a Distribution becomes deliverable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.   As soon as reasonably practicable, the Plan Administrator or his designee shall make all Distributions that become deliverable.  Every three months beginning on the last day of the third month following the Effective Date, the Plan Administrator shall file with the Bankruptcy Court a list setting forth the names of Holders whose Distributions have been returned as undeliverable.  All Holders that do not assert its rights to receive the Distribution within 120 days after the Holder's name appears on the list of undeliverable Distributions filed by the Plan Administrator shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim.  In such case, any consideration held for distribution on account of such Claim or Interest shall revert to the Plan Administrator for distribution in accordance with the terms of the Plan. .

B.      **Fractional and *De Minimis* Distributions**.  Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  Further, the Plan Administrator shall not be required to Distribute, and shall not Distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be Distributed on account of such Claim is less than $20.00.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be Distributed is less than such amount shall have such Claim discharged and shall be forever barred from asserting such Claim and such amount will be donated to a charity chosen by the Plan Administrator.  When there is $20,000.00 or less in Cash available to the Plan Administrator for Distribution, the Plan Administrator may, at his discretion, donate such amount to a charity of his choosing.

C.      **Time Bar to Payment of Distributions**.   Checks issued by the Plan Administrator or his designee on account of Allowed Claims and Allowed Common Stock Interests shall be null and void if not negotiated within 120 days from and after the date of issuance thereof.   Requests for reissuance of any check shall be made directly to the Plan Administrator or his designee by the Holder of the relevant Allowed Claim or Allowed Common Stock Interests with respect to which such check originally was issued, and shall be made at least 120 days after the date of issuance of such check.  After such dates, Claims for the reissuance of checks shall be discharged and forever barred, and any Distributions represented thereby shall be deemed unclaimed property and treated in accordance with the provisions of the foregoing paragraph.

## ARTICLE 11
## RETENTION OF JURISDICTION

Under §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

B.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under §§ 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Reorganized Debtor in performing this Plan shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

C.      Effectuate performance of and payments under the provisions of the Plan;

D.      Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

E.      Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

F.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

G.      Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

I.      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J.      Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

K.      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case or this Plan;

L.      Except as otherwise limited herein, recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

M.      Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

N.      Modify the Plan at the request of the Plan Administrator and as provided by applicable law;

O.      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

P.      Enter a Final Decree closing the Chapter 11 Case.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

A.      **Effectuating Documents and Further Transactions**.  The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities pursuant to the Plan.

B.      **Aid in Implementation of the Plan**.  The Bankruptcy Court may direct the Debtor and any other necessary party to execute or deliver or to join the execution or delivery of any instrument required to effect the Plan, and to perform any other act necessary to consummate the Plan.

4827-1434-9925.v2                                                16

C.  **Exculpation**.   The Debtor and any of its shareholders, officers, directors, employees, advisors, and agents shall neither have nor incur any liability to any Holder of a Claim, or any party acting or asserting a Claim through a Holder of a Claim, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be Distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtor and its shareholders, officers, directors, employees, advisors and agents, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  In addition, the Debtor's Professionals, including the Debtor's attorneys, shall neither have nor incur any liability to any Holder of a Claim, or any party acting or asserting a Claim through a Holder of a Claim, for any act or omission in connection with, related to, or arising out of the Chapter 11 Case, except for willful misconduct or gross negligence.  For the avoidance of doubt, except for the Debtor's attorneys, neither the Debtor nor any of its shareholders, officers, directors, employees, or agents shall be exculpated for any act or omission in connection with, related to, or arising out of the Chapter 11 Case, including the sale of the Bank and all acts or omissions taken after the Petition Date, other than acts or omission taken after the Petition Date in connection with, related to, or arising out the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be Distributed under the Plan.

D.  **Post-Effective Date Statutory Fees**.  All fees payable pursuant to § 1830 of Title 28 of the United States Code incurred after the Effective Date shall be paid in accordance with applicable law.  The Plan Administrator shall submit post-confirmation reports in compliance with applicable law.

E.  **Severability**.  In the event that the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the Holder or Holders of such Claims or Common Stock Interests as to which the provision is determined to be invalid, void, or unenforceable.  The invalidity, voidness, or unenforceability of any such provisions shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

F.  **Section 1125(e) Good Faith Compliance**.  The Debtor, the Plan Administrator, and other parties subject to this Chapter 11 Case, and each of their respective representatives, shall be deemed to have acted in "good-faith" under section 1125(e) of the Bankruptcy Code in connection with the confirmation and consummation of this Plan.

G.  **Binding Effect**.  The Plan shall be binding upon and inure to the benefit of the Debtor and the Holders of Claims and Common Stock Interests and their respective successors and assigns.

H.  **Notices**.  To be effective, all notices, requests, and demands to or upon the Debtor shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or in the case of notice by facsimile transmission or electronic mail, when received, addressed as follows:

*If to the Plan Administrator:*

Patrick M. Donovan
Cordes & Company
5299 DTC Blvd., Suite 600
Greenwood Village, CO  80111
pdonovan@cordesco.com

      I.       **Governing Law**.  Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Colorado without giving effect to the Principles of Conflicts of Law of such jurisdiction.

      J.       **Allocation of Plan Distributions Between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

      K.       **Cancellation of Instruments**.  On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates, warrants or options related to the common stock, and other documents evidencing the Class 1 Claims and Common Stock Interests, shall be deemed automatically canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtor thereunder or in any way related thereto shall be discharged.

May 10, 2018.

COLORADO NATIONAL BANCORP

By:/s/ Scott Jackson
       Scott Jackson
       Chief Executive Officer
Debtor-in-Possession and Proponent of the
Plan

**APPROVED AS TO FORM:**

JACKSON KELLY, PLLC

By:/s/ Steven T. Mulligan
    Steven T. Mulligan, #19901.
    Benjamin J. Ross, #49370
    1099 18th St., Suite 2150
    Denver, CO 80202
    Telephone: (303) 390-0192
    Email:   smulligan@jacksonkelly.com
          bross@jacksonkelly.com

**Attorneys for the Debtor**

**EXHIBIT A**

**List of Claims**

See attached

IN RE COLORADO NATIONAL BANCORP
Case No. 17-20315 EEB
Claims Chart

| Creditor | Class | Scheduled | Scheduled Amount | Contingent / Unliquidated / Disputed | POC # | POC Amount | Projected Allowed Amount |
|---|---|---|---|---|---|---|---|
| PRIORITY TAX CLAIMS | | | | | | | |
| City and County of Denver Treasury 201 W Colfax Ave, Dept. 1001 Attn: Jennifer Maldonado Denver, CO 80202 | N/A | | $0.00 | | 4 | $41,273.21 | $0.00 |
| Internal Revenue Service P.O. Box 7346 Philadelphia, PA  19101-7346 | N/A | | $0.00 | | 3-2 | $0.00 | $0.00 |
| **TOTALS** | | | **$41,273.21** | | | **$41,273.21** | **$0.00** |
| NONPRIORITY UNSECURED CLAIMS | | | | | | | |
| Accutech Systems Corporation 2620 N Accutech Way Muncie, IN 47304 | 1 | F | $0.00 | | | | $0.00 |
| ADP TotalSource, Inc. 1851 N Resler Drive MS-100 El Paso, TX 79912 | 1 | F | $0.00 | | | | $0.00 |
| Ajay and Kristina C Menon 1609 Fantail Ct. Fort Collins, CO 80528 | 1 | F | $1,634.12 | | | | $1,634.12 |
| Albert F. Hummel P.O. Box 3407 Rancho Santa Fe, CA 92067 | 1 | F | $183,376.18 | | | | $183,376.18 |
| Albert F. Hummel P.O. Box 3407 Rancho Santa Fe, CA 92067 | 1 | F | $186,289.49 | | | | $186,289.49 |
| Anthony R. Mayer 8001 S. Interport Blvd. Englewood, CO 80112 | 1 | F | $16,627.01 | | | | $16,627.01 |
| Brian Devlin IRA 1300 Elder Avenue Boulder, CO 80304 | 1 | F | $286,841.13 | | 17 | $286,841.13 | $286,841.13 |
| Brinkerhoff Enterprises, Ltd. 1600 Broadway, Suite 1430 Denver, CO 80202 | 1 | F | $40,199.99 | | | | $40,199.99 |
| Captiva Ventures, LLC 1775 Sherman St., Suite 1350 Denver, CO 80203 | 1 | F | $16,632.48 | | | | $16,632.48 |
| Carter Dammen 16431 Wild Plum Circle Morrison, CO 80465 | 1 | F | $7,983.84 | | | | $7,983.84 |
| CBP, JV 2911 Turtle Creek Blvd., Suite 1240 Dallas, TX 75219 | 1 | F | $19,051.13 | | | | $19,051.13 |
| Century Link, Inc. P.O. Box 91155 Seattle, WA 98111-9255 | 1 | F | $0.00 | | | | $0.00 |
| Charles J. and Darby Burger 1700 Lincoln Street, Suite 2150 Denver, CO 80203 | 1 | F | $164,369.87 | | 9 | $164,484.42 | $164,484.42 |
| Charles J. Burger 1700 Lincoln Street, Suite 2150 Denver, CO 80203 | | F | $10,152.94 | | | | $10,152.94 |
| Chubb Group Holdings, Inc. P.O. Box 382001 Philadelphia, PA 15250-8001 | 1 | F | $0.00 | | | | $0.00 |
| Colorado Department of Law Attn: Jim Holden Ralph L. Carr Colorado Judicial Center 1300 Broadway, 8th Floor Denver, CO 80203 | 1 | F | $0.00 | | | | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Colorado Department of Revenue<br>Attn: Donald Olivett<br>1375 Sherman St.<br>Denver, CO  80261-0004 | 1 | F | $0.00 | | | $0.00 |
| Compass Island Investment<br>Opportunities Fund A, LLP<br>712 Fith Ave., 12th Floor<br>New York, NY 10019 | 1 | F | $120,989.29 | | | $120,989.29 |
| Compass Island Investment<br>Opportunities Fund A, LLP<br>712 Fith Ave., 12th Floor<br>New York, NY 10019 | 1 | F | $957,840.64 | | | $957,840.64 |
| Cooperstien Analytics, LLC<br>140 W. 86th St. 9A<br>New York, NY 10024 | 1 | F | $2,000.00 | | | $2,000.00 |
| Corporation Services Company<br>P.O. Box 13397<br>Philadelphia, PA 19101-3397 | | F | $0.00 | | | $0.00 |
| Cradle Cove Investment<br>Opportunities Fund, LP<br>712 Fifth Ave., 12th Floor<br>New York, NY 10019 | 1 | F | $258,112.90 | | | $258,112.90 |
| CRTT Holdings, LLC<br>Attn: Robert Ekback<br>10634 Sundial Rim Road<br>Highlands Ranch, CO 80126 | 1 | F | $164,616.45 | 8 | $164,731.00 | $164,731.00 |
| Curtis J. Thompson<br>2525 Village Dr.<br>Steamboat Springs, CO 80487 | 1 | F | $246,924.76 | 14 | $246,929.76 | $246,929.76 |
| Curtis J. Thompson<br>2525 Village Dr.<br>Steamboat Springs, CO 80487 | 1 | F | $12,232.59 | | | $12,232.59 |
| David L. & Elizabeth Marr<br>4162 Sand Hill Lane<br>Highlands Ranch, CO 80126 | 1 | F | $39,850.68 | | | $39,850.68 |
| Delaware Secretary of State<br>Division of Corporations<br>P.O. Box 5509<br>Binghamton, NY 13902-5509 | 1 | F | $0.00 | | | $0.00 |
| Diane Cousins<br>540 Columbine Ave.<br>Broomfield, CO 80020 | 1 | F | $12,568.10 | | | $12,568.10 |
| Diane Cousins<br>540 Columbine Ave.<br>Broomfield, CO 80020 | 1 | F | $1,829.93 | | | $1,829.93 |
| Donald A. Yale<br>495 Cook St.<br>Denver, CO 80206 | 1 | F | $24,251.65 | 1 | $15,000.00 | $24,251.65 |
| Eugene Weil, Trustee<br>50 East 10th Street, Apt. 5E<br>New York, NY 10003 | 1 | F | $466,372.03 | | | $466,372.03 |
| Frederick R. Mayer & Jan Perry<br>Mayer Irrevocable Trust FBO<br>Anthony Rickard Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 1 | F | $20,782.58 | | | $20,782.58 |
| Frederick R. Mayer & Jan Perry<br>Mayer Irrevocable Trust FBO<br>Fredrick Maccasler<br>P.O. Box 5272<br>Denver, CO 80217 | 1 | F | $20,782.58 | | | $20,782.58 |
| Frederick R. Mayer & Jan Perry<br>Mayer Irrevocable Trust FBO<br>Perry Ellen Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 1 | F | $49,878.07 | | | $49,878.07 |
| Global Mobile, LLC<br>101 High Street<br>Denver, CO 80218 | 1 | F | $186,289.49 | | | $186,289.49 |
| Gordon Yale<br>725 Newport St.<br>Denver, CO 80220 | 1 | F | $40,521.91 | 2 | $25,000.00 | $40,521.91 |

| Name | | | | | | |
|---|---|---|---|---|---|---|
| Greg Greene<br>2911 Turtle Creek Blvd.<br>Suite 1240<br>Dallas, TX 75219 | 1 | F | $24,363.85 | | | $24,363.85 |
| Guy G. Gibson<br>3070 N. Lakeridge Tr.<br>Boulder, CO 80302 | 1 | F | $186,289.49 | 11 | $186,289.49 | $186,289.49 |
| Guy G. Gibson IRA<br>3070 N. Lakeridge Tr.<br>Boulder, CO 80302 | 1 | F | $388,504.09 | 13 | $388,504.09 | $388,504.09 |
| Internal Revenue Service<br>Ogden, UT 84201-0225 | 1 | F | $0.00 | | | $0.00 |
| Liberty Tr. Co., Cust. fbo Gregory<br>S. Rumsey IRA<br>2708 Bluewood Trail<br>Flower Mound, TX 75022 | 1 | F | $8,397.98 | 5 | $8,071.57 | $8,397.98 |
| Irrevocable Trust of Fredrick<br>Miller Mayer & Mildred Ricket<br>Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 1 | F | $41,563.47 | | | $41,563.47 |
| Jack Henry & Associates, Inc.<br>P.O. Box 609<br>Monett, MO 65708 | 1 | F | $0.00 | | | $0.00 |
| James B. Haden<br>434 Dahlia St.<br>Denver, CO 80220 | 1 | F | $8,325.37 | | | $8,325.37 |
| James R. Feehan<br>191 South Quince St.<br>Denver, CO 80230 | 1 | F | $10,510.81 | | | $10,510.81 |
| Jeffrey Desich<br>12521 Cypress Island Way<br>Wellington, FL 33414 | 1 | F | $671,672.80 | 15 | $671,995.44 | $671,995.44 |
| Jeffrey Desich<br>12521 Cypress Island Way<br>Wellington, FL 33414 | 1 | F | $90,683.87 | | | $90,683.87 |
| Jennifer Renee Young<br>1964 Hacienda Heights Lane<br>Frisco, TX 75034 | 1 | F | $25,138.95 | | | $25,138.95 |
| Jennifer Renee Young<br>1964 Hacienda Heights Lane<br>Frisco, TX 75034 | 1 | F | $1,983.41 | | | $1,983.41 |
| JHM Enterprises, LLC<br>6783 S. Yates Ct.<br>Littleton, CO 80128 | 1 | F | $937,688.95 | 10 | $937,688.95 | $937,688.95 |
| John & Laurel Nelligan<br>23 Ronsard<br>Newport Coast, CA 92657 | 1 | F | $466,291.97 | | | $466,291.97 |
| John & Andrea Horan<br>6170 E. Quincy Ave.<br>Cherry Hills Village, CO 80111 | 1 | F | $40,535.61 | 7 | $275,000.00 | $40,535.61 |
| John R. Sprengle Trust<br>P.O. Box 770008<br>Steamboat Springs, CO 80477 | 1 | F | $8,113.99 | | | $8,113.99 |
| John R. Sprengle Trust<br>P.O. Box 770008<br>Steamboat Springs, CO 80477 | 1 | F | $1,168.75 | | | $1,168.75 |
| John R. Sprengle<br>1727 Sunset Ridge Rd.<br>Highlands Ranch, CO 80126 | 1 | F | $25,089.66 | | | $25,089.66 |
| Julie Devlin IRA<br>1300 Elder Avenue<br>Boulder, CO 80304 | 1 | F | $191,062.97 | 12 | $191,062.97 | $191,062.97 |
| Kathleen Hagan Brown<br>3030 E. Illif<br>Denver, CO 80210 | 1 | F | $16,748.30 | | | $16,748.30 |
| Keenen Dammen<br>178 Strong Island Road<br>Chatham, MA 02633 | 1 | F | $39,727.39 | | | $39,727.39 |
| Kelly Doll<br>345 San Juan Drive<br>Ponte Verde, FL 32082 | 1 | F | $8,085.22 | | | $8,085.22 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kristen Dammen<br>178 Strong Island Road<br>Chatham, MA 02633 | 1 | F | $39,727.39 | | | $39,727.39 |
| Kylemar, LLLP<br>3005 Rosedale Ave.<br>Dallas, TX 75205 | 1 | F | $24,313.29 | 6 | $23,731.85 | $24,313.29 |
| Lewan & Associates, Inc.<br>P.O. Box 912728<br>Denver, CO 80291-2728 | 1 | F | $0.00 | | | $0.00 |
| Mark Haden<br>434 Dahlia St.<br>Denver, CO 80220 | 1 | F | $8,303.90 | | | $8,303.90 |
| Mountain West Series of Lockton<br>Corp., LLC<br>Dept 999226<br>P.O. Box 173850<br>Denver, CO 80217-3850 | 1 | F | $0.00 | | | $0.00 |
| Nelson Cole<br>P.O. Box 1323<br>Kremmling, CO 80459 | 1 | F | $3,774.31 | | | $3,774.31 |
| Nelson Cole IRA<br>P.O. Box 1323<br>Kremmling, CO 80459 | 1 | F | $21,922.17 | | | $21,922.17 |
| Nelson Cole Roth IRA<br>P.O. Box 1323<br>Kremmling, CO 80459 | 1 | F | $5,039.53 | | | $5,039.53 |
| Nicholas Filla<br>700 17th St. Suite 100<br>Denver, CO 80206 | 1 | F | $10,775.33 | | | $10,775.33 |
| Nicholas Filla<br>700 17th St. Suite 100<br>Denver, CO 80206 | 1 | F | $883.42 | | | $883.42 |
| Patrick S. Wallace<br>2525 Stemmons Freeway<br>Dallas, TX 75207 | 1 | F | $3,014.62 | | | $3,014.62 |
| Plaintiffs in State Court Case<br>No. 2016 CV 32240<br>c/o James T. Markus<br>1700 Lincoln St., Suite 4550<br>Denver, CO 80203 | 1 | F | $29,320.11 | | | $29,320.11 |
| Pricewaterhouse Coopers, LLP<br>P.O. Box 75647<br>Chicago, IL 60675-5647 | 1 | F | $11,000.00 | | | $11,000.00 |
| Retama, LLLP<br>1600 Broadway, Suite 1430<br>Denver, CO 80202 | 1 | F | $481,365.41 | | | $481,365.41 |
| Retama, LLLP<br>1600 Broadway, Suite 1430<br>Denver, CO 80202 | | F | $54,812.00 | | | $54,812.00 |
| Richard Desich<br>12521 Cypress Island Way<br>Wellington, FL 33414 | 1 | F | $671,898.55 | 16 | $672,108.32 | $672,108.32 |
| Richard Desich<br>12521 Cypress Island Way<br>Wellington, FL 33414 | 1 | F | $90,683.87 | | $91,634.18 | $91,634.18 |
| Scot Holding, Inc.<br>110 Mesa Park Drive, Suite 100<br>El Paso, TX 79912 | 1 | F | $24,251.65 | | | $24,251.65 |
| Scot Holding, Inc.<br>110 Mesa Park Drive, Suite 100<br>El Paso, TX 79912 | 1 | F | $3,506.11 | | | $3,506.11 |
| Scott A. Vanderhoofven<br>1820 S. 143rd E.<br>Wichita, KS 67230 | 1 | F | $8,371.95 | | | $8,371.95 |
| Scott Jackson<br>101 High Street<br>Denver, CO 80218 | 1 | F | $94,524.63 | | | $94,524.63 |
| Scott L. Gesell<br>2923 E. 134th Street<br>Bixby, OK 74008 | 1 | F | $28,398.88 | | | $28,398.88 |
| Scott L. Gesell<br>2923 E. 134th Street<br>Bixby, OK 74008 | 1 | F | $7,920.82 | | | $7,920.82 |

| Creditor | Class | Schedule / Form | Total Common Stock Position | Contingent / Unliquidated / Disputed | POC # | POC Amount | Projected Allowed Amount |
|---|---|---|---|---|---|---|---|
| Sherron G. Perry<br>9525 King St.<br>Ancorage, AK 99515 | 1 | F | $218,082.36 | | | | $218,082.36 |
| The John and Karen Sprengle Trust<br>1727 Sunset Ridge Rd.<br>Highlands Ranch, CO 80126 | 1 | F | $80,386.28 | | | | $80,386.28 |
| The John and Karen Sprengle Trust<br>1727 Sunset Ridge Rd.<br>Highlands Ranch, CO 80126 | 1 | F | $34,187.99 | | | | $34,187.99 |
| Thomas A. Gesell<br>2620 G St. South<br>Siuth Sioux City, NE 68776 | 1 | F | $4,052.11 | | | | $4,052.11 |
| Tim Baxter<br>2281 Vantage Street<br>Dallas, TX 75207 | 1 | F | $8,170.56 | | | | $8,170.56 |
| Wilblairco II, LLC<br>222 West Adams St.<br>Chicago, IL 60606 | 1 | F | $68,955.49 | | | | $68,955.49 |
| ZKB Properties, LLC<br>1600 Broadway, Suite 1430<br>Denver, CO 80202 | 1 | F | $5,844.75 | | | | $5,844.75 |
| **TOTALS** | | F | **$8,794,436.21** | | | **$4,349,073.17** | **$8,796,153.03** |

| Creditor | Class | Schedule / Form | Total Common Stock Position | Contingent / Unliquidated / Disputed | POC # | POC Amount | Projected Allowed Amount |
|---|---|---|---|---|---|---|---|
| COMMON STOCK INTEREST CLAIMS (UNSECURED) | | | | | | | |
| Ajay Menon<br>1609 Fantail Ct.<br>Fort Collins, CO 80528 | 2 | Official Form 207 | 666 | | | | |
| Albert A. Rayle III IRA Rollover<br>3302 West Andrews Dribve<br>Atlanta, GA 30305 | 2 | Official Form 207 | 13,333 | | | | |
| Albert F. Hummel<br>P.O. Box 3407<br>Rancho Santa Fe, CA 92067 | 2 | Official Form 207 | 100 | | | | |
| Andrew J. Marshall<br>6854 Lewis Court<br>Littleton, CO 80127 | 2 | Official Form 207 | 3,333 | | | | |
| Andrew Yale<br>495 Cook St.<br>Denver, CO 80206 | 2 | Official Form 207 | 1,667 | | | | |
| Anthony R. Mayer<br>8001 S. Interport Blvd.<br>Englewood, CO 80112 | 2 | Official Form 207 | 6,666 | | | | |
| Bere Neas<br>P.O. Box 770038<br>Steamboat Springs, CO 80477 | 2 | Official Form 207 | 3,333 | | | | |
| Blue Eagle, LLC<br>310 Eudora St.<br>Denver, CO 80220 | 2 | Official Form 207 | 3,334 | | | | |
| Brad Busse<br>3000 Ohm Way<br>Denver, CO 80209 | 2 | Official Form 207 | 16,666 | | | | |
| Bradley J. Shipman<br>291 Monroe St.<br>Denver, CO 80206 | 2 | Official Form 207 | 1,111 | | | | |
| Brandon May<br>1184 S. Vine St.<br>Denver, CO 80210 | 2 | Official Form 207 | 291 | | | | |
| Brett A. Rowland<br>415 E. 54th St., Apartment 5F<br>New York, NY 10022 | 2 | Official Form 207 | 800 | | | | |
| Captiva Ventures, LLC<br>1775 Sherman St., Suite 1350<br>Denver, CO 80203 | 2 | Official Form 207 | 6,666 | | | | |
| Carter K. Dammen<br>16431 Wild Plum Circle<br>Morrison, CO 80465 | 2 | Official Form 207 | 3,333 | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Casey D. Miles<br>6820 Linford Lane<br>Jacksonville, FL 32217 | 2 | Official<br>Form 207 | 7,500 | | | | |
| CBP, JV<br>2911 Turtle Creek Blvd.,<br>Suite 1240<br>Dallas, TX 75219 | 2 | Official<br>Form 207 | 7,700 | | | | |
| Central Wyoming Urological<br>Associates<br>434 Dahlia St.<br>Denver, CO 80220 | 2 | Official<br>Form 207 | 3,333 | | | | |
| Charles Burger<br>1700 Lincoln Street, Suite 2150<br>Denver, CO 80203 | 2 | Official<br>Form 207 | 8,750 | | | | |
| Coleen Sue Frens-Rossman<br>481 S. Corona St.<br>Denver, CO 80209 | 2 | Official<br>Form 207 | 251 | | | | |
| Compass Island Investment<br>Opportunities Fund A, LP<br>712 Fith Ave., 12th Floor<br>New York, NY 10019 | 2 | Official<br>Form 207 | 205,146 | | | | |
| Cradle Cove Investment<br>Opportunities Fund A, LP<br>712 Fifth Ave., 12th Floor<br>New York, NY 10019 | 2 | Official<br>Form 207 | 55,519 | | | | |
| CRTT Holdings, LLC<br>10634 Sundial Rim Road<br>Highlands Ranch, CO 80126 | 2 | Official<br>Form 207 | 8,750 | | | | |
| David L. Marr & Elizabeth B<br>Marr<br>4162 Sand Hill Lane<br>Highlands Ranch, CO 80126 | 2 | Official<br>Form 207 | 42,833 | | | | |
| David P. Tuttle<br>74 Dogwood Lane<br>New Canaan, CT 06840 | 2 | Official<br>Form 207 | 3,334 | | | | |
| DB Holdings (New York), Inc.<br>60 Wall Street<br>New York, NY 10005 | 2 | Official<br>Form 207 | 99,580 | | | | |
| Diane Cousins<br>540 Columbine Ave.<br>Broomfield, CO 80020 | 2 | Official<br>Form 207 | 19,333 | | | | |
| Donald A. Yale<br>495 Cook St.<br>Denver, CO 80206 | 2 | Official<br>Form 207 | 10,000 | | | | |
| Dustin Herman<br>540 Pennsylvania St., Unit D<br>Denver, CO 80203 | 2 | Official<br>Form 207 | 3,333 | | | | |
| ECKO Resources, LLC<br>2525 Stemmons Feeeway<br>Dallas, TX 75207 | 2 | Official<br>Form 207 | 13,200 | | | | |
| FBO Coleen Sue Frens-Rossman<br>NTC & CO FB<br>481 S. Corona St.<br>Denver CO 80209 | 2 | Official<br>Form 207 | 6,666 | | | | |
| Four Winds Enterprises, LTD<br>8080 N. Central Expressway,<br>Suite 780B<br>Dallas, TX 75206 | 2 | Official<br>Form 207 | 16,670 | | | | |
| Frederick R Mayer & Jan Perry<br>Mayer Irr Trst FBO Anthony<br>Richard Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 2 | Official<br>Form 207 | 8,333 | | | | |
| Frederick R Mayer & Jan Perry<br>Mayer Irr Trst FBO Frederick<br>Maccasler Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 2 | Official<br>Form 207 | 8,333 | | | | |
| Frederick R Mayer & Jan Perry<br>Mayer Irr Trst FBO Perry Ellen<br>Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 2 | Official<br>Form 207 | 20,000 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| FVP MASTERFUND L.P.,<br>551 Fifth Ave., 36th Floor<br>New York, NY 10176 | 2 | Official<br>Form 207 | 348,815 | | |
| Global Mobile, LLC<br>101 High Street<br>Denver, CO 80218 | 2 | Official<br>Form 207 | 38,308 | | |
| Gordon Yale & Jennifer Carver<br>as Tenants in Common<br>725 Newport St.<br>Denver, CO 80220 | 2 | Official<br>Form 207 | 16,666 | | |
| Greg Charles Greene<br>2911 Turtle Creel Blvd.,<br>Suite 1240<br>Dallas, TX 75219 | 2 | Official<br>Form 207 | 13,333 | | |
| Ilya Polyakov<br>37 Boss House, 2  Boss Street SE1<br>2PS<br>London, Untied Kingdom | 2 | Official<br>Form 207 | 5,000 | | |
| IRA Plus Southwest, LLC FBO<br>Gregory S. Rumsey<br>3025 Commerce St.<br>Dallas, TX 75226 | 2 | Official<br>Form 207 | 3,334 | | |
| Irrevocable Trust of Fredrick<br>Miller Mayer and Mildred Ricket<br>Mayer<br>P.O. Box 5272<br>Denver, CO 80217 | 2 | Official<br>Form 207 | 16,666 | | |
| Jacques De Saint Phalle<br>919 Third Ave.<br>New York, NY 10022 | 2 | Official<br>Form 207 | 3,333 | | |
| James C. Doughan<br>401 City Avenue<br>Bala Cynwyd, PA 19004 | 2 | Official<br>Form 207 | 700 | | |
| James R. Feehan<br>191 Quince St.<br>Denver, CO 80203 | 2 | Official<br>Form 207 | 4,333 | | |
| Jeffrey Desich<br>12521 Cypress Island Way<br>Wellington, FL 33414 | 2 | Official<br>Form 207 | 250,000 | | |
| Jennifer Renee Young<br>1964 Hacienda Heigths Lane<br>Frisco, TX 75304 | 2 | Official<br>Form 207 | 3,333 | | |
| John Sprengle CGM IRA Rollover<br>Custodian<br>c/o Morgan Stanley Smith Barney<br>3280 Peachtree Rd. NE,<br>Suite 1900<br>Atlanta, GA 30305 | 2 | Official<br>Form 207 | 10,000 | | |
| John Horan & Andrea Horan<br>6170 Quincy Ave.<br>Cherry Hills Village, CO 80111 | 2 | Official<br>Form 207 | 16,667 | | |
| John K. Schultz<br>9565 Silent Hills Lane<br>Lone Tree, CO 80124 | 2 | Official<br>Form 207 | 3,000 | | |
| John R. Sprengle Trust<br>P.O. Box 770008<br>Steamboat Springs, CO 80477 | 2 | Official<br>Form 207 | 3,333 | | |
| John T. Baxter<br>2281 Vantage Road<br>Dallas, TX 75207 | 2 | Official<br>Form 207 | 3,333 | | |
| Kathleen Hagan Brown<br>3030 E. Illif<br>Denver, CO 80210 | 2 | Official<br>Form 207 | 17,382 | | |
| Kathrynn Ann Rinn<br>201 Bradford Dr.<br>Milford, OH 45150 | 2 | Official<br>Form 207 | 1,111 | | |
| Keenen Wyn Dammen Revocable<br>Trust<br>178 Strong Island Road<br>Chatham, MA 02633 | 2 | Official<br>Form 207 | 18,452 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Kelly Doll<br>345 San Juan Drive<br>Pont Verde, FL 32082 | 2 | Official<br>Form 207 | 3,333 | | | | |
| Ken Allen<br>6101 S. Marion Way<br>Centennial, CO 80121 | 2 | Official<br>Form 207 | 10,714 | | | | |
| Kerstin S. Dammen Revocable<br>Trust<br>178 Strong Island Road<br>Chatham, MA 02633 | 2 | Official<br>Form 207 | 18,452 | | | | |
| Kylemar, LLLP<br>3005 Rosedale Ave.<br>Dallas, TX 75205 | 2 | Official<br>Form 207 | 3,333 | | | | |
| Lee & Janet Anderbery<br>5120 Jade Court<br>Lincoln, NE 68516 | 2 | Official<br>Form 207 | 3,333 | | | | |
| Liberty Harbor TC Master<br>Partnership, LP<br>GSAM Liberty Harbor<br>1 American Lane<br>Greenwich, CT 06831 | 2 | Official<br>Form 207 | 33,453 | | | | |
| Marcelina Lynn Rivera<br>851 S. High Street<br>Denver, CO 80209 | 2 | Official<br>Form 207 | 2,666 | | | | |
| Margaret A. Austin<br>4510 Steeley Ave.<br>Downers Grove, IL 60515 | 2 | Official<br>Form 207 | 2,000 | | | | |
| Margareta S. Sudbrink Revocable<br>Trust<br>3900 Ocean Drive<br>Apartment 17GH<br>Lauderdale-By-Sea, FL 33308 | 2 | Official<br>Form 207 | 3,333 | | | | |
| Mark Haden<br>434 Dahlia St.<br>Denver, CO 80220 | 2 | Official<br>Form 207 | 21,933 | | | | |
| Mathew G Lamb<br>35866 Whispering Pine Ct.<br>Elizabeth, CO 80107 | 2 | Official<br>Form 207 | 3,616 | | | | |
| Mathew H. Briger<br>8 Sunrise Drive<br>Cherry Hills, CO 80113 | 2 | Official<br>Form 207 | 3,666 | | | | |
| Maureen Stackhouse<br>6873 Parker Creek Place<br>Frisco, TX 75034 | 2 | Official<br>Form 207 | 251 | | | | |
| Michael O'Neill<br>7415 Highland Drive<br>Lakewood, CO 80214 | 2 | Official<br>Form 207 | 5,000 | | | | |
| Mile High Western South, LLC<br>65 East 55th Street, 30th Floor<br>New York, NY 10022 | 2 | Official<br>Form 207 | 147,196 | | | | |
| Mile High Western, LLC<br>65 East 55th Street, 30th Floor<br>New York, NY 10022 | 2 | Official<br>Form 207 | 53,996 | | | | |
| Nelson Cole<br>P.O. Box 1323<br>Kremmling, CO 80459 | 2 | Official<br>Form 207 | 99 | | | | |
| Nelson Cole IRA<br>P.O. Box 1323<br>Kremmling, CO 80459 | 2 | Official<br>Form 207 | 8,700 | | | | |
| Nelson Cole Roth IRA<br>P.O. Box 1323<br>Kremmling, CO 80459 | 2 | Official<br>Form 207 | 2,000 | | | | |
| Nicholas Filla<br>700 17th Street, Suite 100<br>Denver, CO 80202 | 2 | Official<br>Form 207 | 22,475 | | | | |
| NTC & CO Tenise Homan<br>6010 Blossom St.<br>Houston, TX 77007 | 2 | Official<br>Form 207 | 6,666 | | | | |
| Palmetto Credit Fund, LP<br>GSAM Liberty Harbor<br>1 American Lane<br>Greenwhich, CT 06831 | 2 | Official<br>Form 207 | 33,453 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Rachel Plencer<br>45 Ogden Street, Unit 52<br>Denver, CO 80218 | 2 | Official<br>Form 207 | 6,666 | | | |
| RETAMA, LLLP<br>1600 Broadway, Suite 1430<br>Denver, CO 80202 | 2 | Official<br>Form 207 | 133,258 | | | |
| Richard Desich<br>12521 Cypress Island Way<br>Wellington, FL 33414 | 2 | Official<br>Form 207 | 250,000 | | | |
| Robert Hoffman<br>1887 Deer Park Circles<br>Grand Junction, CO 81507 | 2 | Official<br>Form 207 | 75 | | | |
| Scot Holding, Inc.<br>P.O. Box 522541<br>El Paso, TX 79952 | 2 | Official<br>Form 207 | 10,000 | | | |
| Scott A. Vanderhoofven<br>1820 South 143rd E.<br>Wichita, KS 67230 | 2 | Official<br>Form 207 | 3,333 | | | |
| Scott D. Jackson<br>101 High Street<br>Denver, CP 80218 | 2 | Official<br>Form 207 | 53,246 | | | |
| Scott L. Gesell<br>2923 E. 134th Street<br>Bixby, OK 74008 | 2 | Official<br>Form 207 | 50,479 | | | |
| Sheldon M. Miles<br>6820 Linford Lane<br>Jacksonville, FL 32217 | 2 | Official<br>Form 207 | 7,500 | | | |
| Sherron Perry and Kelly Perry<br>Irrevocable Alaska Trust<br>9525 King St.<br>Ancorage, AK 99515 | 2 | Official<br>Form 207 | 66,263 | | | |
| Sophia Symko<br>347 Race St.<br>Denver, CO 80209 | 2 | Official<br>Form 207 | 333 | | | |
| Sparks Family Investments, LLC<br>64 Parade Hill Lane<br>New Canaan, CT 06840 | 2 | Official<br>Form 207 | 33,333 | | | |
| Steve Meyer<br>685 Crest Court<br>Grand Junction, CO 81506 | 2 | Official<br>Form 207 | 75 | | | |
| Steve Rosdal<br>291 Monroe St.<br>Denver, CO 80206 | 2 | Official<br>Form 207 | 3,333 | | | |
| Susie M. Cohen<br>157 Fiesta Way<br>Fort Lauderdale, FL 33301 | 2 | Official<br>Form 207 | 1,111 | | | |
| Tara Anne Leberman<br>45 Ogden Street, Unit 52<br>Denver, Co 80218 | 2 | Official<br>Form 207 | 204 | | | |
| Tenise Homan<br>6010 Blossom St.<br>Houston, TX 77007 | 2 | Official<br>Form 207 | 17,151 | | | |
| The John & Karen Sprengle Trust<br>1727 Sunset Ridge Rd.<br>Highlands Ranch, CO 80126 | 2 | Official<br>Form 207 | 59,858 | | | |
| The Jones Foundation, LLC<br>c/o Arlington Trust Company<br>2000 Morris Ave., Suite 1210<br>Birmingham, AL 65203 | 2 | Official<br>Form 207 | 33,333 | | | |
| Thomas A. Gesell<br>2620 G St. South<br>South Sioux City, NE 68766 | 2 | Official<br>Form 207 | 3333 | | | |
| Timothy Dumler<br>4701 Delaware Drive<br>Larkspur, CO 80118 | 2 | Official<br>Form 207 | 3,333 | | | |
| Wilblairco II, LLC<br>222 West Adams St.<br>Chicago, IL 60606 | 2 | Official<br>Form 207 | 26,666 | | | |
| ZKB Properties, LLP<br>1600 Broadway, Suite 1430<br>Denver. CO 80202 | 2 | Official<br>Form 207 | 16,667 | | | |
| **TOTALS** | | | 2,556,180 | | | |